UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRIAN JOSEPH GUILLOTTE | * | CIVIL ACTION |
| VERSUS | * | NO. 21-1775 |
| EAST BATON ROUGE PARISH, ET AL. | * | SECTION "B" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Brian Guillotte filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendants East Baton Rouge Parish, Lieutenant Neil Ledet, and Lafourche Parish based on allegations that his due process rights were violated when he was denied access to a multipurpose room with law library and free notary services. ECF No. 1; *see also* ECF No. 3. This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. L.R. 73.2(A). Also pending is Plaintiff's Motion to Amend Complaint to add Sheriff Craig Webre. ECF No. 9.

Having considered the record, including Plaintiff's original complaint, his § 1983 Fact Statement, additional supplemental filings, *Spears* hearing testimony, and the applicable law, the undersigned recommends that all of Plaintiffs' alleged claims against East Baton Rouge Parish, Lt. Neil Ledet, and Lafourche Parish and all other named Defendants be DISMISSED. The Court further finds that Plaintiff's Motion to Amend (ECF No. 9) should be DENIED as futile.

## I.    BACKGROUND

### A.    Allegations in the Original Complaint, Fact Statement, & Supplemental Filings

On September 24, 2021, Plaintiff Brian Guillotte ("Guillotte"), who at the time of filing was a pretrial detainee incarcerated at LaFourche Parish Correctional Complex ("LPCC"), filed his complaint against East Baton Rouge Parish, Lt. Neil Ledet, and Lafourche Parish alleging his

due process rights were violated as he was (1) not provided access to a notary to notarize court filings while incarcerated at LPCC and he could not afford one on his own; and (2) the multipurpose room which held the law library was closed to him on several occasions. ECF No. 1, at 4–7. Guillotte timely responded to this Court's Order to provide an additional statement of facts. ECF Nos. 5, 10. In his Statement of Facts, Guillotte named additional defendants: Sheriff Craig Webre, Captain Carla Beck, Deborah Guidry, Doug Welborn, Sid Gautreaux III, and Warden Cantrelle Davis. ECF No. 10, at 1–2. With leave of Court, Guillotte supplemented his complaint with documents showing several grievances he filed, a request for notary services, the verification form he needed to be notarized, and a written statement by another prisoner that Guillotte was denied access to law library. *See* ECF Nos. 6, 7. Guillotte also filed a Motion to Amend Complaint where he seeks to add Sheriff Craig Webre as Sheriff of 17th District of Louisiana. ECF No. 9, at 1.

Guillotte was incarcerated at LPCC as a pretrial detainee until his apparent release evidenced by his change of address notice on November 29, 2021 indicating a new address at a private residence located at 1001 Elizabeth Street, Lockport, LA 70347. *See* ECF No. 17. Guillotte states he was incarcerated at LPCC while "on a probation and parole violation for Terrebonne Parish." ECF No. 10, at 2. While still a pretrial detainee, Guillotte filed this suit claiming that his Sixth Amendment rights had been violated as he had not received access to free notary services and adequate access to legal resources to file a civil complaint with the 19th Judicial District Court involving a challenge to his criminal charges in the 17th Judicial District Court. *See* ECF No. 1, at 7; ECF No. 10, at 3–4.

Guillotte states that the law library located in the multipurpose room is only accessible to the inmates once every ten months. ECF No. 10, at 3. On the month when the multipurpose was

accessible to Guillotte, he claims Lt. Ledet decided to close the multipurpose room which prevented Guillotte from accessing the room and legal resources.  ECF No. 1, at 5, 6.

In addition to not having access to legal resources located in the multipurpose room, Guillotte also claims he should be provided free notary services as he needed a verification form for the 19th Judicial District Court to be notarized.  ECF No. 1, at 7; *see also* ECF No. 6-1, at 2. Guillotte wants to file a civil suit in the 19th Judicial District Court based on his assertion that he was being held illegally.  ECF No. 1, at 7.  Due to the closing of the multipurpose room on several occasions by Lt. Ledet and the lack of access to notary services, Guillotte alleges that he was prevented from filing suit in 19th Judicial District Court and needed access for his criminal case. ECF Nos. 1, at 6–7; 10, at 4–5.  Guillotte also states that Lt. Ledet responded to a grievance by telling Guillotte not to file grievances anymore.  ECF No. 1, at 5.  Guillotte asserts this response violated his First and Sixth Amendment rights.  ECF No. 1, at 5, 7; No. 10, at 3, 5–6.

Guillotte submitted a grievance on June 24, 2021 which shows he completed multiple steps in the grievance procedure.  ECF Nos. 13, at 6; 7-1, at 1; 9-1, at 1.  In this grievance, he writes that he has limited access to a cart that only provides civil information and no access to law library. ECF No. 13, at 6.  Responding officers state that copies have been provided to Guillotte, he has access to a cart, he has an attorney, and the facility is in the process of getting a law library program at a kiosk machine.  *Id.*  Guillotte also filed grievances on September 15, 2021 and July 12, 2021 (while Guillotte wrote 2020 on his grievance, the response from the officer is dated 2021); however, neither grievance shows additional steps completed.  ECF No. 1, at 4–5.

For relief, Guillotte requests a new system to be set up for indigent prisoners to file paperwork, a law library in Lafourche Parish, financial compensation of $50,000 for denying due

process in blocking his filing of paperwork, and $10,000 from Lt. Ledet.  ECF No. 1, at 8. Defendant Guillotte also wrote "writ of habeas corpus" on the front of his complaint.  ECF No. 1.

### B.  *Spears* Hearing Testimony

During the *Spears* hearing, Guillotte stated he had been incarcerated at LPCC since his arrest on March 16, 2021.  Guillotte was arrested for three contempt of court charges filed against him for missing court proceedings in his criminal case in the 17th Judicial District Court, which charges include possession of methamphetamine and drug paraphernalia.  Guillotte stated he failed to appear due to the effects of the COVID-19 pandemic.  Guillotte's testimony during the *Spears* hearing reiterated similar facts he put forth in earlier filings - the limited availability of a law cart, the limited resources in the law cart (which sometimes included only outdated civil resources), Lt. Ledet's actions in restricting access to the law cart when it was available to Guillotte, the requirement of a notary to file a complaint with the 19th Judicial District Court, and the lack of access to a notary at LPCC.  Guillotte also stated he only had access to civil law books, and there was no state law in law programming, which he only had access to twice in eight months.  Guillotte claimed these limitations violated his due process rights and prevented him from making filings in the 19th Judicial District Court, as well as in the Eastern District of Louisiana.  Guillotte did not ask the 19th Judicial District Court for an alternative method to submit filings, but did ask officials at LPCC and confirmed there was no one present there to administer oaths (This is also confirmed by a request for services that Guillotte submitted to the Court.  ECF No. 6-1).

As to Guillotte's filings in the 19th Judicial District Court, the Court clarified that Guillotte was attempting to file something regarding what he believes was a false arrest on March 16, 2021, which arrest is related to his pending state criminal charges in the 17th Judicial District Court. Guillotte stated he also is trying to defend himself against the "contempt charges."  Guillotte

confirmed that he had court-appointed counsel that currently represented him on the state criminal charges, but he expressed concern that he had only seen his attorney one time since his arrest and his attorney never sees or talks to him.  Guillotte also claimed his lack of access to law cart affected his ability to make filings in the Eastern District of Louisiana.[1]  For the state criminal case and federal cases, he stated he was not able to file proper paperwork.

Guillotte stated he named East Baton Rouge Parish as "overseer" of the 19th Judicial District Court.  He named Lt. Neil Ledet due to Lt. Ledet ordering the closure of the multipurpose room which is where the law cart was located.  Since his incarceration at LPCC on or shortly after March 16, 2021, Guillotte's block had one month or roughly 25 days of access to the law cart. During that month, Guillotte asserted that on shifts when Lt. Ledet was on duty (Lt. Ledet was one of four Lieutenants rotating shifts), his orders to close the multipurpose room blocked Guillotte from using the law cart.  Guillotte stated that the restrictions Lt. Ledet put in place, the old books, and only having access one out of every ten months were violations of his due process rights. Guillotte confirmed that when other officers were on duty, however, he had access to the law cart during those 25 days.

Guillotte also believed he had been retaliated against for filing grievances as he stated he was placed on lockdown or on suicide watch after filing.  Guillotte stated he has another civil law

---

[1] Although Guillotte referenced only two pending cases in the Eastern District of Louisiana, at the time of the *Spears* hearing, Guillotte had five pending § 1983 cases, including this one, in the Eastern District of Louisiana.  The other four cases have since been dismissed as frivolous or for failure to state a claim.  *See Guillotte v. Lafourche Parish*, No. 21-1400, 2022 WL 775339 (E.D. La. Feb. 11, 2022) (dismissing claims regarding handling of COVID-19), *R&R adopted* 2022 742473 (E.D. La. Mar. 11, 2022); *Guillotte v. Knowlin*, No. 21-1422, 2022 WL 355509 (E.D. La. Feb. 7, 2022) (adopting earlier R&R after consent was received and dismissing Guillotte's alleged medical indifference and medical malpractice claims relating to a shoulder injury and claims of illegal incarceration, false arrest, and mail tampering); *Guillotte v. Lafourche Parish*, No. 21-1850, 2022 WL 1464460 (E.D. La. Apr. 5, 2022) (dismissing Guillotte's § 1983 suit alleging access to courts violation as he was not timely provided court date and alleging state tort claims), *R&R adopted* 2022 WL 146155 (E.D. La. May 9, 2022); *Guillotte v. Louisiana State*, No. 21-2016, 2022 WL 304673 (E.D. La. Jan. 4, 2022) (dismissing suit involving allegations regarding FEMA payments to Lafourche Parish and the Parish illegally incarcerating inmates), *R&R adopted* 2022 WL 293355 (Feb. 1, 2022).

suit for medical indifference for his arm and a second civil law suit for handling of COVID-19. Guillotte also recounted being punched by a cellmate on Lt. Ledet's shift, and after Guillotte was thrown in lockdown, he asked Lt. Stanley Jones when his shoulder was going to be seen, and Lt. Jones responded, "Watch what you say because you just got out of the hole."

Guillotte seeks to name Sheriff Craig Webre as the Sheriff of Lafourche Parish and thus, in charge of LPCC. Guillotte has not personally spoken with Sheriff Webre nor has he ever seen him. Similarly, with Sheriff Sid Gautreaux III, Guillotte named him as Sheriff of East Baton Rouge Parish where 19th Judicial District Court sits. He named Captain Carla Beck as she was the Captain at LPCC that responded to his grievances on June 24, 2021. He named Deborah Guidry as the law librarian who he asked for access to library while he was in special housing unit. She told him no one was getting access. Doug Welborn is the Clerk of Court at 19th Judicial District Court where Guillotte needed to send notarized paperwork. Guillotte named Warden Cantrelle Davis as the Warden of LPCC and overseer of the facility and confirmed he had no personal contact with Warden Davis.

## II.    LEGAL STANDARDS

### A.  Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's[2] § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[3] A prisoner's *in forma pauperis* complaint may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious or fails to state a claim on which relief

---

[2] Courts treat plaintiff as a "prisoner" and apply statutory screening if plaintiff was a prisoner at the time of filing. *See, e.g.*, *Moore v. United States Prob.*, No. 16-148, No. 16-279, No. 16-280, 2017 U.S. Dist. LEXIS 58304, at *1 n.1 (N.D. Miss. Apr. 17, 2017) ("Although Plaintiff is now on probation, he was incarcerated at the time of the filing of his Complaints, and thus, § 1915A applies."). Accordingly, Guillotte's apparent release has no impact on the analysis.
[3] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).

may be granted.[4]  A claim is frivolous if it "lacks an arguable basis in law or fact."[5]  A claim lacks

an arguable basis in law if it is "'based on an indisputably meritless legal theory, such as if the

complaint alleges the violation of a legal interest which clearly does not exist.'"[6]  A factually

frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and

'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[7]  A court may not

dismiss a claim simply because the facts are "unlikely."[8]  A complaint fails to state a claim on

which relief may be granted when the factual allegations do not rise above a speculative level, with

the assumption that all factual allegations in the complaint are true, even if doubtful.[9]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R.

Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989) held that a claim which is dismissed

under one rule does not "invariably run afoul" of the other.[10]  If an *in forma pauperis* complaint

lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and

§1915(e).[11]  "When a complaint raises an arguable question of law which the district court

ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is

appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[12]

---

[4] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); 42 U.S.C. § 1997e(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).
[5] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[6] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[7] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).
[8] *Id.*
[9] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[10] *See also Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e)))).
[11] *Id.*.
[12] *Id.*

B.  **The _Spears_ Hearing**

The initial screening of a _pro se_ prisoner's claim includes a review of the complaint and testimony from a _Spears_ hearing.[13]  The purpose of a _Spears_ hearing is to dig beneath the conclusory allegations of a _pro se_ complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[14]  "[T]he _Spears_ procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[15]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e).[16]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[17]

The court may make only limited credibility determinations in a _Spears_ hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[18]  "The [C]ourt should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[19]

C.  **Motion to Amend Complaint**

The Court has not yet issued a Rule 16 Scheduling Order.  Thus, Plaintiff's request for leave to amend is governed by Fed. R. Civ. P. 15(a) rather than the more stringent good cause requirements of Fed. R. Civ. P. 16(b).[20]

---

[13] _Spears v. McCotter_, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

[14] _Id._

[15] _Davis v. Scott_, 157 F.3d 1003, 1005–06 (1998).

[16] _Wilson v. Barrientos_, 926 F.2d 480, 482 (5th Cir. 1991) (citing _Spears_, 766 F.2d at 181–82; _Adams v. Hansen_, 906 F.2d 192, 194 (5th Cir. 1990) (citation omitted).

[17] _Spears_, 766 F.2d at 182.

[18] _Norton v. Dimazana_, 122 F.3d 286, 292 (5th Cir. 1997) (citing _Cay v. Estelle_, 789 F.2d 318, 326–27 (5th Cir. 1986), _overruled on other grounds by Denton v. Hernandez_, 504 U.S. 25 (1992); _Wilson_, 926 F.2d at 482).

[19] _Id._

[20] _See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA_, 315 F.3d 533, 535-36 (5th Cir. 2003) (Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired and allows modification only for good cause and with the judge's consent; Rule 15(a)'s more liberal standard applies to the decision to grant or deny leave only after the movant demonstrates good cause to modify the scheduling order) (citing Fed. R. Civ. P. 16(b)).

Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so requires."[21]  The five relevant considerations for examination by the court in determining whether to grant leave to amend a complaint are: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[22]  Given Rule 15(a)'s "bias in favor of granting leave to amend,'" absent a "substantial reason," the court's discretion "is not broad enough to permit denial."[23]

## III.    LAW AND ANALYSIS

### A.    Required Elements of § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[24]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[25]  Because § 1983 merely provides a remedy for designated rights, rather than

---

[21] Fed. R. Civ. P. 15(a)(2).  Denial of leave to amend is reviewed for abuse of discretion.  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173–74 (5th Cir. 2006).  A district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility.  *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citation omitted).

[22] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (*citing Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

[23] *Id.* at 595 (citation omitted); *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citing *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)).

[24] 42 U.S.C. § 1983.

[25] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).

creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[26]  A plaintiff must satisfy three elements to establish § 1983 liability:

    (1) deprivation of a right secured by the U.S. Constitution or federal law;

    (2) that occurred under color of state law; and

    (3) was caused by a state actor.[27]

To hold a defendant personally liable under § 1983, a plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the [defendant] and the alleged constitutional violation."[28]

    Even liberally construing Guillotte's complaint, supplemental filings, and *Spears* hearing testimony, Guillotte fails to state a claim of violation of his constitutional right to access courts by Defendants Lafourche Parish, East Baton Rouge Parish, Lt. Neil Ledet, Sheriff Craig Webre, Sheriff Sid Gautreaux III, Warden Cantrelle Davis, Captain Carla Beck, Deborah Guidry, and Doug Welborn as he is represented by counsel on the state matters for which he seeks to file or research, and his civil rights suits in the Eastern District of Louisiana have all been dismissed as frivolous and/or failure to state a claim. Guillotte's claim that the 19th Judicial District Court's requirement of a notary to file his complaint is unconstitutional should also be dismissed as neither East Baton Rouge Parish nor Doug Welborn are proper defendants.  Guillotte's sparse, vague and conclusory allegations of retaliation for filing grievances mentioned during his *Spears* hearing fall far short of that necessary to state a claim and do not rise above mere speculation.  Finally,

---

[26] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[27] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[28] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006).

Guillotte's claims of verbal threat by Lt. Ledet should be dismissed as frivolous since verbal threats are not constitutional violations.

### B.  Access to Law Library and Notary

Although Guillotte states his access to courts claim as arising under the Sixth Amendment,[29] the right to access courts, which a claim for inadequate access to legal resources or law library would be subsumed under, is "incorporated into the First Amendment right to petition the government for redress of grievances," applicable through the Fourteenth Amendment.[30] Guillotte claims his right to access the courts was violated by Defendants due to LPCC's lack of a free notary as well as Lt. Ledet's restrictions on Guillotte's access to the law cart within the multipurpose room, which only occurred when Lt. Ledet was on shift for the month the law cart was available to Guillotte's block.

Prisoners, including pretrial detainees,[31] have a fundamental constitutional right of meaningful access to the courts.[32] "Prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"[33] The right to access courts is ancillary to an underlying nonfrivolous claim or cause of action, which "is an element that must be described in the complaint, just as allegations must describe the official acts frustrating the

---

[29] ECF No. 1, at 7.

[30] *Hamilton v. Gautreaux*, No. 16-117, 2016 WL 6306107, at *2 (M.D. La. Oct. 6, 2016) (citing *Driggers v. Cruz*, 740 F.3d 333, 336-37 (5th Cir. 2014) (citing *Bill Johnson's Rest., Inc. v. N.L.R.B.*, 461 U.S. 731 (1983))), *R&R adopted* 2016 WL 6398914 (M.D. La. Oct. 25, 2016).

[31] *Wetzel v. Strain*, No. 9-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010) (citations omitted).

[32] *Mendoza v. Strickland*, 414 F. App'x 616, 618 (5th Cir. 2011) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated by Lewis v. Casey*, 518 U.S. 343 (1996)).

[33] *Id.* (quoting *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825)).

litigation."[34]  Thus, a prisoner's right to access courts is limited to allowing opportunities to file nonfrivolous claims challenging their convictions or conditions of confinement.[35]

     To provide meaningful access to courts, prisons must provide the legal materials and "tools . . . that the inmates need in order to attack their sentences, directly or collaterally."[36]  The right does not guarantee any particular methodology, and prisons have "considerable" discretion in providing legal resources to prisoners.[37]  Prisoners who allege their right to access courts has been violated must also demonstrate actual injury, such as loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding,[38] resulting from denial of access to courts.[39]  "[A]n inmate cannot demonstrate the requisite actual injury for an access-to-courts claim 'simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense[,]'" rather a prisoner must establish that his efforts to pursue a nonfrivolous action were hindered.[40]  Without a showing of this actual injury, a Plaintiff lacks standing to pursue a claim of denial of access to the courts.[41]

     Outside of providing a law library or legal assistance programs, a prisoner's right to access courts is satisfied when the prisoner has legal counsel for the underlying claim or cause of action

---

[34] *Id.* (internal quotations omitted) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[35] *Galloway v. Nesbit*, No. 20-170, 2020 WL 6704568, at *1 (N.D. Miss. Nov. 13, 2020) (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)).

[36] *Lewis*, 518 U.S. at 355 (internal quotations and citation omitted).

[37] *James v. Mendoza*, No. 8-253, 2008 WL 4858372, at *4 (S.D. Tex. Nov. 10, 2008) (citing *Lewis*, 518 U.S. at 356); *Jones*, 188 F.3d at 325).

[38] *Galloway*, 2020 WL 6704568, at *1 (citing *Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970)).

[39] *Id.*  (citing *Walker v. Navarro Cnty. Jail,* 4 F.3d 410, 413 (5th Cir. 1993); *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)).

[40] *Brantner v. Freestone Cnty. Sheriff's Office*, No. 20-50528, 2022 WL 2077960, at *3 (5th Cir. 2022) (citing *Lewis*, 518 U.S. at 351; *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019)).

[41] *Weathers v. Doe*, No. 05-54, 2008 WL 1924231, at *2 (S.D. Tex. Apr. 29, 2008) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) ("To meet the standing requirement, plaintiff 'must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief' . . . Plaintiff 'must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him.'").

for which he asserts he cannot pursue or defend.[42]   Appointment of counsel satisfies a pretrial detainee's right of access to courts for criminal proceedings, and under those circumstances, a pretrial detainee is not entitled to independent access to a law library and legal materials.[43]

Guillotte claims the restrictions on his access to the multipurpose room, and other limitations such as outdated books, violated his constitutional right for meaningful access to the courts and prevented him from making filings to challenge an arrest related to his state criminal charges, from defending himself against those state criminal charges, and from making filings related to his civil rights cases in the Eastern District of Louisiana.  First, Guillotte's claims of lack of access to the courts due to restrictions placed at LPCC or lack of notary services fail as Guillotte is represented by counsel for the pending state criminal charges against him.  As stated above, the appointment of counsel to represent a prisoner provides a pretrial detainee with meaningful access to the court, and thus, a pretrial detainee who is represented by counsel is not additionally entitled to independent access to a law library and legal materials.  Since Guillotte's *Spears* testimony confirmed that he is represented on his state criminal charges for which he is incarcerated and challenges an arrest related to the contempt charges in that criminal proceeding, Guillotte's court-appointed counsel represents him on these matters and thus Guillotte cannot state a viable right to access courts claim based on the facts in this case.

---

[42] *Mendoza*, 414 F. App'x at 618–19 (affirming district court's decision that Plaintiff could not assert his right to access the courts was infringed in relation to his plea deal as he was represented by counsel in that federal case) (citing *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981) (dismissing a complaint for failure to state a claim because "[a]s long as a criminal defendant is represented by counsel, he will be able to present matters for decision to the court through motions filed by his attorney.")).

[43] *Robinson v. Rapides Par. Det. Ctr.*, No. 06-0743, 2006 WL 3533142, at *2 (W.D. La. Oct. 2, 2006) (citing *Caraballo v. Fed. Bureau of* Prisons, 124 F. App'x 284, 285 (5th Cir. 2005)); *Wetzel v. Strain*, No. 9-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010) (citing cases); *Mitchell v. Gusman*, No. 07-5470, 2008 WL 449650, at *3 (E.D. La. Feb. 14, 2008) (citing *Sosa v. Strain*, No. 06-9040, 2007 WL 1521441, at *6 n.8 (E.D. La. May 22, 2007); *Buckenburger v. Strain,* No. 06-5670, 2006 WL 4503353, at *3 (E.D. La. Oct. 20, 2006); *Kirkpatrick v. Daugherty*, No. 05-461, 2006 WL 2401108, at *4 (E.D.Tex. Aug. 17, 2006)); *VanHook v. Nelms*, No. 12-60, 2012 WL 3779139, at *4 (E.D. Tex. Aug. 30, 2012) (citing *Mendoza*, 414 F. App'x at 618–19; *Tarter*, 646 F.2d at 1014).

Second, as to Guillotte's civil rights suits in the Eastern District of Louisiana, all these suits have been dismissed as frivolous and/or failure to state a claim. In order to assert a right to access courts claim relating to his civil rights suits, Guillotte must demonstrate that he seeks to research or submit filings on a nonfrivolous claim. Given the finding of frivolousness and/or failure to state a claim on Guillotte's civil rights cases, he cannot demonstrate actual injury due to lack of law resources or access to law library at LPCC.

## C. **Requirement of a Notary at 19th Judicial District Court**

Guillotte asserts the requirement for notarized filings at the 19th Judicial District Court is unconstitutional, naming East Baton Rouge Parish as overseer of the 19th Judicial District Court and Clerk of Court Doug Welborn as defendants. Neither of these parties are proper defendants under § 1983, and thus, this claim should be dismissed.

East Baton Rouge Parish is not an "overseer" of the 19th Judicial District Court as the 19th Judicial District Court is one of the State of Louisiana's 43 judicial district courts and is not an entity or court of the Parish. Furthermore, as a state clerk of court, Doug Welborn enjoys absolute immunity for any "damages arising from acts they are specifically required to do under court order or at a judge's discretion" and qualified immunity "for those routine duties not explicitly commanded by either court decree or judicial instruction." [44] Whether the notary requirement is ministerial or from a court order, and whether Welborn himself sent the form, he enjoys immunity for such ministerial acts.

Even if Guillotte sought to name the State of Louisiana, under the Eleventh Amendment, "[c]itizens may not bring suit against a state or any instrumentality thereof without the state's

---

[44] *Burnett v. Denman*, 368 Fed. App'x 603, 604 (5th Cir. 2010) (per curiam) (citing *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)); *Bailey v. Johnston*, No. 12-1765, 2012 WL 5207589, at *5 (W.D. La. Oct. 1, 2012) (citing *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001)).

consent."[45] "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official

capacities.'"[46]  The United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the
> state or its agencies in federal courts.  When a state agency is the named defendant,
> the Eleventh Amendment bars suits for both money damages and injunctive relief
> unless the state has waived its immunity.  By statute, Louisiana has refused any
> such waiver of its Eleventh Amendment sovereign immunity regarding suits in
> federal court.  See La. Rev. Stat. Ann. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment
> immunity by unequivocally expressing its intent to do so and by acting pursuant to
> a valid exercise of power.  We note that in enacting § 1983, Congress did not
> explicitly and by clear language indicate on its face an intent to sweep away the
> immunity of the States.[47]

While a State may expressly waive this Eleventh Amendment sovereign immunity, Louisiana has

by statute declined to do so.[48]  This court would therefore lack jurisdiction over a complaint against

the State of Louisiana as a defendant in this case.

To the extent Guillotte intended to sue the 19th Judicial District Court itself, it has long

been recognized that "state courts are not considered 'persons' within the meaning of § 1983."[49]

The 19th Judicial District Court also is not an entity with juridical capacity, *i.e.* an entity subject

to suit, under Louisiana law and is not a proper defendant under Fed. R. Civ. Proc. 17(b)(2).[50]

---

[45] *Rodriguez v. Tex. Commn. on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000) (addressing U.S. CONST. amend. XI).

[46] *Med. RX/Sys., P.L.L.C. v. Tex. Dep't of St. Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 71, (1989)).

[47] *Cozzo v. Tangipahoa Par. Council-President Govt.*, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); *Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999); *McGuire v. Lafourche Par. Work-Release Facility*, No. 09-6755, 2009 WL 4891914, at *3-4 (E.D. La. Dec. 4, 2009).

[48] *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (stating that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dept. of Highways*, 780 F.2d 268, 1271-73 (5th Cir. 1986).

[49] *Moity v. La. St. Bar Assoc.*, 414 F. Supp. 180, 182 (E.D. La.), *aff'd*, 537 F.2d 1141 (5th Cir. 1976); *Dunn v. Louisiana*, No. 10-4519, 2011 WL 446651, at *3 (E.D. La. Jan. 20, 2011), *report and recommendation adopted*, 2011 WL 445684, at *1 (E.D. La. Feb. 3, 2011); *Thompson v. St. Bernard Par. Ct.*, No. 09-4465, 2010 WL 110797, at *3 (E.D. La. Jan. 11, 2010); *Stewart v. Crim. Dist. Ct. of Louisiana*, No. 08-3731, 2008 WL 4758610, at *2 (E.D. La. Oct. 30, 2008); *Knight v. Guste*, No. 07-1124, 2007 WL 1248039, at *3 (E.D. La. Apr. 27, 2007).

[50] *See Griffith v. Louisiana*, 808 F. Supp. 2d 926, 934 (E.D. La. 2011) ("[A] Louisiana state court does not qualify as a juridical person and thus lacks the capacity to be sued."); *Durden v. Bryson*, No. 17-214, 2017 WL 4855437, at *2 (W.D. La. Sep. 26, 2017), *report and recommendation adopted by* 2017 WL 4847783, at *1 (W.D. La. Oct. 25, 2017); *Chisom v. Edwards*, No. 86-4075, 2012 WL 13005340, at *7-9 (E.D. La. Aug. 6, 2012); *Swift v. Juvenile Court*, No. 2009-1182, 2010 WL 786031 (La. App. 3d Cir. Mar. 10, 2010) (finding "that the law does not grant a juvenile court the procedural capacity to sue or be sued.").

Even if the court could be sued, claims against the court, as a division or agency of the State, would barred by the Eleventh Amendment for the reasons addressed above.[51]

### D. **Shoulder Injury and Medical Indifference**

In the *Spears* hearing, Guillotte described his injuries to his arm and/or shoulder related to another civil case that he suffered since he was arrested on March 6, 2021. *See Guillotte v. Knowlin*, No. 21-1422, 2021 WL 7632004 (E.D. La. Dec. 7, 2021), 2022 WL 877492 (Jan. 19, 2022). Guillotte also described an altercation with a cellmate, during which he was punched but he did not throw a punch, and he was placed in lockdown afterwards. Guillotte remarked that after he was released from lockdown, he asked Lt. Jones about his shoulder for which he had previously received x-rays. Lt. Jones warned Guillotte to watch what he said because he just got out of the hole, which Guilotte characterized as a verbal threat. While Guillotte does not state any additional facts in his filings or *Spears* hearing to suggest he seeks to assert a medical indifference claim related to an arm or shoulder injury, even if he had, he has already raised a medical indifference claim based on this shoulder injury in an earlier § 1983 suit. *See Guillotte v. Knowlin*, No. 21-1422, 2021 WL 7632004 (E.D. La. Dec. 7, 2021), 2022 WL 877492 (Jan. 19, 2022).

Pursuant to § 1915(e) and § 1915A, a court may dismiss a prisoner's complaint as malicious when it "seek[s] to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the

---

[51] *See, e.g.*, *Dunn*, 2011 WL 446651, at *3; *Wilkerson v. 17th Jud. Dist. Ct.*, No. 08-1196, 2009 WL 249737, at *3-4 (E.D. La. Jan. 30, 2009); *Rackley v. Louisiana*, No. 07-504, 2007 WL 1792524, at *3 (E.D. La. Jun. 21, 2007); *see also Jefferson v. La. St. Sup. Ct.*, No. 01-31275, 2002 WL 1973897 (5th Cir. Aug. 9, 2002) ("The Eleventh Amendment clearly bars Jefferson's § 1983 claims against the Louisiana Supreme Court, which is a branch of Louisiana's state government.") (citing *Southern Christian Leadership Conference v. Sup. Ct. of State of La.*, 252 F.3d 781, 783 n.2 (5th Cir. 2001)).

[prisoner]."[52]  A case is duplicative and malicious "if it involves 'the same series of events' and allegations of 'many of the same facts as an earlier suit.'"[53]

That the prior cases may have involved different defendants does not affect the maliciousness of a successive action.[54]  Likewise, the assertion of a new claim in a successive complaint that arises from the same allegations of a prior complaint is also considered a malicious.[55]  Moreover, "it is malicious for a pauper to file a lawsuit that duplicates allegations of another *pending* federal lawsuit by the same plaintiff."[56]  Thus, to the extent Guillotte seeks to assert a medical indifference claim, it would be considered malicious and subject to dismissal on that basis.

### E.  Retaliation

In his *Spears* hearing, Guillotte stated that "they shut down" his three-step grievance and he was unjustly treated and stopped writing "arps" or grievances out of fear as he was "sent to lockdown [and] sent to suicide" after he filed grievances.  Guillotte did not specifically state which Defendants he was referencing when he said "they" but he stated that he filed the paperwork with Lt. Ledet.  Therefore, the Court liberally construes this alleged claim against Lt. Ledet and Lafourche Parish.  Additionally, Guillotte also points to Lt. Ledet's response to a grievance he filed (ECF No. 1, at 5) as possible retaliation.  Liberally construing these factual allegations, Guillotte does not state a viable claim of retaliation for which relief can be granted.

---

[52] *Wilson v. Lynaugh*, 878 F. 2d 846, 850 (5th Cir. 1989).

[53] *Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013) (quoting *Bailey v. Johnson*, 846 F. 2d 1019, 1021 (5th Cir. 1988)).

[54] *See Bailey*, 846 F. 2d at 1021..

[55] *See Potts v. Texas*, 354 F. App'x 70, 71 (5th Cir. 2009).

[56] *Pittman v. Moore*, 980 F. 2d 994, 995 (5th Cir. 1993) (emphasis added) (internal quotation marks omitted); *see Lewis*, 508 F. App'x at 344; *Bailey*, 846 F. 2d at 1021 ("[A]n IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under . . . section 1915(d).").

The Fifth Circuit has recognized that officials may not retaliate against an inmate for using the grievance system.[57]  To state a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.[58]  The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights."[59]  Courts must regard retaliation claims with caution, however, as "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties[, thus] retaliation claims must be regarded with skepticism lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."[60]  Prisoners must establish retaliatory motive and but for that motive, the retaliatory event would not have occurred.[61]  Additionally, the retaliatory adverse act must pass the *de minimis* threshold required to be actionable.[62]  The retaliatory act must be such that it would deter a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.[63]

---

[57] *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989) (holding that if prison regulations establish the grievance procedure as a liberty interest, then retaliation for a prisoner exercising that interest creates a valid claim under 42 U.S.C. § 1983 and finding that the Louisiana Department of Correction handbook establishes that right and states no reprisal action shall be taken for anyone using that procedure in good faith); *Johnson v. McVea*, No. 15-1586, 2016 WL 1242840, at *7 (E.D. La. Mar. 7, 2016) (citing cases), *R&R adopted* 2016 WL 1223067 (E.D. La. Mar. 29, 2016).
[58] *Newsome v. Fairly*, No. 17-280, 2019 WL 2496663, at *6 (S.D. Miss. Jan. 28, 2019) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998))), *R&R adopted* 2019 WL 1128759 (S.D. Miss. Mar. 12, 2019)).
[59] *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)).
[60] *Newsome,* 2019 WL 2496663, at *7 (internal quotations omitted) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).
[61] *Id.* (citing *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988)).
[62] *Morris*, 449 F.3d at 687 (finding that a transfer in job duties that did not subject plaintiff to harsh conditions was not a sufficient retaliatory act but moving plaintiff to more dangerous unit was).
[63] *Id.* at 686 ("We must explain, however, that this threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials.  Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.")

In this case, Guillotte's allegations fall short of anything more than barebone conclusory statements from which a plausible inference of retaliation *cannot* be made. "Mere conclusory allegations of retaliation" or a prisoner's mere belief that an action had retaliatory motive are insufficient to establish retaliation.[64]  Despite the opportunity to file supplemental documents, a Fact Response Statement, and provide oral testimony in *Spears* hearing, Guillotte has provided no direct evidence of retaliation, nor has he alleged a chronology of events from which retaliation may be plausibly inferred.[65]  He only described a single instance of being placed on lockdown on Lt. Ledet's shift after being in a fight. Further, in filings in another suit, Guillotte writes about suicidal thoughts and being placed on suicide after expressing these thoughts.[66]

Given the only alleged retaliatory acts (being placed on suicide or lockdown) resulted after a fight, and taking judicial notice of Guillotte's statements in other filings regarding suicidal thoughts while at LPCC, Guillotte has not alleged a single instance of retaliation and only has produced a conclusory allegation based on his belief.  "The mere fact that supposed retaliation occurred around the time that [plaintiff] was attempting to exercise his rights and utilize the prison grievance system is not enough to state a claim for retaliation."[67]  Thus, his alleged claim should be dismissed.

### F.  Verbal Threats by Lt. Jones

In his *Spears* hearing, Guillotte also detailed an incident with a Lt. Stanley Jones where Jones warned Guillotte he would be placed back in lockdown if he kept complaining about his

---

[64] *Woods*, 60 F.3d at 1166; *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).
[65] *See Gonzalez v. Sarabia*, 720 Fed. App'x 213, 214 (5th Cir. 2018) (affirming district court's decision to dismiss the § 1983 complaint as Plaintiff did not make sufficient factual allegations to demonstrate he was transferred in retaliation for grievances or allege a timeline of events from which the court could have plausibly inferred); *Newsome,* 2019 WL 2496663, at *7 (holding that despite the numerous filings with the Court, Plaintiff had not provided more than general and conclusory allegations of retaliation and thus, the claim must fail).
[66] *See* Guillotte v. Knowlin, et al., No. 21-1422, ECF No. 4-1, at 6.
[67] *Newsome*, 2019 WL 2496663, at *7 (citing *Gonzales*, 720 Fed. App'x at 214)).

shoulder, although Guillotte does not name Jones as a defendant.  Further, Guillotte complains of Lt. Ledet's response to a grievance where Lt. Ledet writes to Guillotte to stop filing these grievances.  ECF No. 1, at 5.

Allegations of threats and harassment by a guard simply do not state colorable civil rights claims and are not actionable under § 1983.[68]  Thus, the mere use of verbal slurs and threats by a prison guard do not rise to the level of a constitutional violation.[69]  Indeed, the Fifth Circuit has consistently rejected *retaliation* claims based solely on a prison's guards use of threatening or derogatory language.[70]  Lt. Ledet's written response creates no plausible inference of a threat, and Lt. Jones verbal threat cannot be a constitutional violation.  Therefore, this claim should also be dismissed.

### G.  Habeas Relief

To the extent that Plaintiff's complaint can be read to challenge his assistance of counsel,[71] he must pursue that claim on habeas corpus grounds.[72]  However, a habeas request is not properly asserted or sought in this civil rights action.  Further, Guillotte has not shown that he has exhausted available state-court remedies, and his release from custody is not an available remedy under § 1983."[73]  Guillotte would have to present any habeas claims he may have in the proper habeas corpus proceeding, not this § 1983 complaint.  He therefore fails to state a claim for which relief can be granted under § 1983.

---

[68] *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action.).

[69] *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.").

[70] *Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859-60 (5th Cir. 2020).

[71] Guillotte wrote "Writ of Habeas Corpus" on his Complaint. ECF No. 1, at 1.

[72] *Hernandez v. Spencer*, 780 F.2d 504, 505 (5th Cir. 1986).

[73] *See Smith v. Lafourche Par.*, No. 21-1714, 2021 WL 4975698, at *3 (E.D. La. Sep. 30, 2021) (discussing when habeas relief can be granted), *R.&R. adopted,* 2021 WL 4972374, at *1 (E.D. La. Oct. 26, 2021); *accord Lerille v. Lafourche Par.*, No. 21-1729, 2021 WL 4975754, at *3 (E.D. La. Sep. 30, 2021), *R.&R. adopted,* 2021 WL 4972369, at *1 (E.D. La. Oct. 26, 2021).

IV.    **CONCLUSION**

Guillotte's access to court claim against all Defendants in this case (Lafourche Parish, East Baton Rouge Parish, Sheriff Craig Webre, Sheriff Sid Gautreaux III, Warden Cantrelle Davis, Lt. Neil Ledet, Captain Carla Beck, Deborah Guidry, and Doug Welborn) should be dismissed for failure to state a claim upon which relief can be granted because Guillotte has been appointed counsel on the matters for which he seeks access to a library to research and defend and because his civil rights suits have all been dismissed as frivolous and/or failure to state a claim. Guillotte's claim that requirement of a notary at the 19th Judicial District Court is unconstitutional should be dismissed because, after liberally construing his filings, there are no proper defendants for this claim. As to his possible claims of retaliation, the claims should also be dismissed for failure to state a claim as Guillotte provided only conclusory allegations that do not rise past the speculative level. Finally, verbal threats are insufficient to establish constitutional violations under § 1983. Therefore, Guillotte has not stated any § 1983 claim that survives review.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Amend (ECF No. 13) to add Sheriff Craig Webre is DENIED as futile;

**IT IS RECOMMENDED** that Plaintiff's § 1983 claim against East Baton Rouge Parish, Lafourche Parish, Sheriff Craig Webre, Sheriff Sid Gautreaux III, Warden Cantrelle Davis, Lt. Neil Ledet, Captain Carla Beck, Deborah Guidry and Doug Welborn be DISMISSED WITH PREJUDICE for failure to state a claim of right to access courts upon which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's § 1983 claim of retaliation and/or verbal threats against Lt. Neil Ledet and any other Defendants named be DISMISSED WITH PREJUDICE for failure to allege facts sufficient to state a claim.

IT IS FURTHER RECOMMENDED that Plaintiff's § 1983 claim that the requirement of notarized papers at the 19th Judicial District Court is unconstitutional be DISMISSED WITH PREJUDICE as neither Doug Welborn nor East Baton Rouge are proper defendants under § 1983.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[74]

New Orleans, Louisiana, this _____20th_____ day of July, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[74]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).